UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case Number 16-20772

v.                                              Honorable David M. Lawson

ALVIN CAVER HILL, IV,

        Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Alvin Hill has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2). Hill has not exhausted his remedies with the BOP, a necessary prerequisite for seeking compassionate release, and even if he had, he has not demonstrated extraordinary circumstances justifying immediate release. Nor does the Court believe that a recommendation for early placement by the BOP to home confinement is appropriate. The motion will be denied.

I.

Defendant Alvin Hill pleaded guilty to one count of conspiracy to distribute controlled substances, 21 U.S.C. § 846. On April 25, 2017, the Honorable Avern Cohn sentenced him to 60 months in prison. The defendant presently is confined by the Bureau of Prisons at FCI Milan in Milan, Michigan, which is a low security facility that houses around 1,290 inmates. Hill presently has served approximately 41 months or around 68% of his custodial sentence. Public records of

the BOP indicate that the defendant is scheduled to be released from prison on October 4, 2021. Hill is 36 years old.

On September 11, 2020, Hill filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. On September 24, 2020, Hill filed through his retained counsel a second motion seeking the same relief. The government filed a response opposing the first motion on procedural and substantive grounds. The Court allowed the government an opportunity to file a supplemental opposition to the second motion, but it skipped that chance and filed nothing further until last week, when it filed a notice of supplemental authority followed minutes later with an *ex parte* motion to strike its notice.

The most recent data disclosed by the BOP indicates that there are 26 active coronavirus cases among inmates and eight among staff at the Milan facility. In addition, 85 inmates and 55 staff members previously were diagnosed and now have recovered. Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after [s]he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

A.

Prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

The defendant does not appear to dispute that his first request for compassionate release was presented to prison authorities in late September, although he maintains that he did submit two prior requests for transfers to home confinement. Despite the presentation to and denial of the home confinement requests by the warden, the record does not demonstrate exhaustion within the meaning of section 3582(c)(1)(A). In *Alam*, the Sixth Circuit held that "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court . . . by moving for it on his own behalf," but "[t]o do that, he must 'fully exhaust[] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." 960 F.3d at 833-34 (quoting 18 U.S.C. § 3582(c)(1)(A)). The court of appeals further held that the exhaustion requirement is a claim processing rule that does not implicate subject matter jurisdiction, but that it also is mandatory and not subject to waiver, forfeiture, or any pertinent equitable exception, at least where the government timely asserts an objection based on failure to exhaust.

The defendant's motions do not suggest that he ever submitted a request for compassionate release to the prison warden. Instead, the defendant asserts only that he submitted two requests for transfer to home confinement, which were denied. Thus, the defendant was not entitled to

proceed with seeking judicial review based on the expiration of the 30-day statutory waiting period after a request for compassionate release that has met with no action. The FSA allows two paths to judicial review of compassionate release rulings by BOP authorities, and both begin with the submission of a request to the warden. The inmate may seek judicial review if the warden denies his request and the defendant then exhausts his administrative appeals, *see* 28 CFR § 571.63; 28 CFR § 542.15, or 30 days elapses "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). But the defendant may not proceed to Court directly without first either completing the administrative appeal process or waiting at least 30 days after tendering his request for release.

The defendant does assert in his motion that he previously submitted requests for administrative transfer to home confinement under 18 U.S.C. § 3624(c) and the CARES Act provisions which expanded eligibility for home confinement. But he does not dispute the government's representation that his request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) first was presented to prison authorities on September 21, 2020, after his first motion was filed, and less than three days before his second motion was filed.

The distinction matters because the Court does have authority to review an unreasonable denial by prison officials of a request for compassionate release, but it has no authority either to determine the place of confinement for a custodial inmate or to direct the BOP in making that determination. "[U]nder section 12001(b)(2) [of the CARES Act and 18 U.S.C. § 3642(c)(2)], '[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP.'" *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020) (quoting Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12001(b)(2), 134 Stat. 281 (2020)); *see also United States v.*

*Oliver*, No. 17-20489, 2020 WL 2768852, at *1 (E.D. Mich. May 28, 2020) ("Because decisions about where a prisoner will serve his federal sentence are relegated to the United States Bureau of Prisons ('BOP'), with no mechanism for review by the sentencing court, this Court lacks jurisdiction to transfer Oliver to home confinement."). Moreover, the Sixth Circuit has held that submission of a prior request for administrative transfer to home confinement does not satisfy the exhaustion requirement with respect to the separate remedy of compassionate release. *United States v. Desjardins-Racine*, 817 F. App'x 219, 221 (6th Cir. 2020) ("[A]lthough Desjardins-Racine points to his administrative request for home confinement as satisfying the exhaustion requirement, that request made no mention of compassionate release and instead sought a different form of relief — a transfer in custody under § 3624(c)(2) and the CARES Act — with different eligibility requirements. Thus, the district court correctly determined that Desjardins-Racine failed to exhaust his administrative remedies.").

The defendant has not established that he has exhausted available administrative avenues for advancing his request for compassionate release with the prison authorities, and the available information suggests that he did not wait at least 30 days after a request was submitted before filing either of his present motions.

B.

Upon a proper motion by either prison authorities or the inmate himself, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Hill relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served,

by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, No. 20-3701, --- F.3d ---, 2020 WL 6817488, at \*7 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

Addressing the first element — extraordinary and compelling reasons — Hill argues that his medical conditions expose him to elevated risk of complications from the highly-contagious novel coronavirus. Those conditions include obesity, asthma, and a "history of bilobar klebsiella pneumonia diagnosis." In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may

require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Id.* at *2 n.6.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (36) does not put him in a high-risk category, where the CDC generally advises that there is an increasing risk of severe illness with increasing age, but it denotes only those who are 65 or older as being within the cohort at highest risk. *See ibid.* ("In general, your risk of getting severely ill from COVID-19 increases as you get older. In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older."). However, the defendant correctly points out that obesity (BMI > 30) is a recognized risk factor. *See* CDC, Risk Factors: People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The medical records submitted to the Court with the government's response, which included medical examination reports from July and August 2019, do not document the defendant's height or weight, or any computation of his body mass index (BMI). However, the defendant stated in his first motion that he is 5' 10" tall and weighs 235 pounds. Those figures correspond to a BMI of 33.7, which is above the obesity threshold of 30.0 recognized by the CDC as a serious risk factor. Def.'s Mot., ECF No. 32, PageID.130; CDC Risk factors, *supra* ("Having

obesity, defined as a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 or severe obesity (BMI of 40 kg/m2 or above), increases your risk of severe illness from COVID-19."). The government does not dispute, and federal courts regularly have held, that obesity poses a sufficient medical risk to establish extraordinary circumstances weighing in favor of release, at least where the inmate is confined at a facility with an active COVID-19 outbreak. *See United States v. Olawoye*, No. 15-00172, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020).

The defendant also asserts that he has a history of past diagnosis with bilateral klebsiella pneumonia. The klebsiella bacteria naturally occurs in the human digestive tract where it serves a benign function, but it can cause respiratory infections and pneumonia in certain vulnerable patients, typically those who on are an extended course of antibiotics or are subjected to long term ventilator therapy or intravenous catheterization in a hospital setting, all which can compromise the body's balance of native bacterial flora. Otherwise healthy persons typically do not contract klebsiella related disease. https://www.cdc.gov/hai/organisms/klebsiella/klebsiella.html. Prior history of diagnosis with bacterial pneumonia is not among the factors listed by the current CDC guidance as triggering an elevated risk for complications from a coronavirus infection. Moreover, the bout with pneumonia evidently was remote and preceded the defendant's incarceration, since his description of the incident includes the statement that he was "sent home" with directions to continue IV antibiotics. *See* Def.'s Mot., ECF No. 32, PageID.130. There is no indication in the available medical records that the defendant presently suffers from any active respiratory disease.

The defendant also asserts that he has asthma, but the available medical records do not document any diagnosis or treatment for any grade of asthma. The medical records also do not indicate whether any past asthma condition was either "moderate" or "severe" and "persistent," which are the grades of asthma recognized as an elevated medical risk. The CDC recognizes

"moderate to severe" asthma as a risk factor for COVID-19 infection, but the defendant's medical records do not indicate that his asthma meets either of those criteria. *See* CDC Risk Factors, *supra*; *see also* WedMD: What is Asthma?, https://www.webmd.com/asthma/what-is-asthma ("3. Moderate persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities. 4. Severe persistent asthma. Ongoing symptoms both day and night. You have to limit your activities."). The defendant's records do not confirm any past history of asthma, and they do not disclose any suggestion that it persistently is either "moderate" or "severe."

The defendant has not established any other pertinent risk factors, but the government concedes that his obesity at least is sufficient to establish an extraordinary medical risk for the purposes of the second element of the compassionate release analysis.

However, another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be low. Recent reports indicate that the probability of infection at Milan, though once quite high, now has declined significantly, with the prison now having 26 active cases among its nearly 1,300 inmates and eight among staff. To be sure, the government's position that the defendant is at little or no risk is less reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *See Wilson*, 961 F.3d at 849 (Cole, J., concurring) (observing that in the absence of any program of comprehensive prophylactic testing, reports of low infection rates are questionable at best); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) (same). Nevertheless, the most recent information indicates that the defendant's probability of infection is as low as it would be in a home setting, and perhaps lower when considering that measures taken

by the BOP apparently have turned back the spread of the virus among inmates at Milan, despite the recent acceleration of the pandemic among the public at large, including in Michigan, where daily case counts are spiking at levels several times higher than the worst peaks recorded during the spring surge of the pandemic. *See* Coronavirus Statistics: Michigan, https://www.worldometers.info/coronavirus/usa/michigan/.

"[O]n similar facts this Court has declined to order the release of otherwise healthy . . . inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk," particularly where they were confined at institutions with few or no active coronavirus cases. *United States v. Price*, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020) (collecting cases). There are no distinguishing facts here that warrant a different result, particularly in light of the relatively low risk of infection.

C.

Hill also requests that the Court recommend that the BOP place him in home confinement under the CARES Act, 18 U.S.C. § 12003(b)(2). As noted above, a defendant's request for home confinement under the CARES Act is different than a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020); *United States of America, v. Benjamin Gordon*, No. 16-082, 2020 WL 3964041, at *1 (S.D. Ga. July 13, 2020). Section 12001(b)(2) is directed at the Attorney General. If he finds that emergency conditions will materially affect the functioning of the BOP, the Director of the BOP may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2). Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). And the Attorney General has done just that: in a memorandum

issued on April 3, 2020, the Attorney General utilized his authority under the CARES Act to direct the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), available at https://www.justice.gov/file/1266661/download.

But under section 12001(b)(2), "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP." *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, No. 1911445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief). Therefore, the district court has no authority to grant relief under section 12003(b)(2).

However, the defendant's request might be invoking a similar provision of the Second Chance Act. "The Second Chance Act of 2007 . . . increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons (BOP) to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" *Vasquez v. Strada*, 684 F.3d 431, 432-33 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)). "In accordance with the Act, regulations were issued so that placement in a community correctional facility by the BOP is conducted in a manner consistent with 18 U.S.C. § 3621(b)." *Ibid.* (citing 28 C.F.R. § 570.22). That statute, in turn, states that any recommendation by the sentencing court that a convicted person serve a term of imprisonment in a community corrections facility "shall

have no binding effect on the authority of the Bureau . . . to determine or change the place of imprisonment of that person." 18 U.S.C. § 3621(b).  Relevant factors that the BOP shall consider include "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission."  *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at *1 (6th Cir. Dec. 29, 2009) (citing 18 U.S.C. § 3621(b)).

Hill asserts that his risk of recidivism is low, and he has availed himself of prison programs for improving his education and job prospects, including completion of his GED and obtaining an associate degree and paralegal certification, on top of ongoing employment in a prison work program.  Nonetheless, the Court believes that the BOP is in a better position than the Court to assess the propriety of the defendant's placement for reentry at an appropriate time, based on the applicable statutory factors and all of the information then available.

### III.

Hill has not exhausted his administrative remedies, and he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 32, 38) are **DENIED**.

The government's motions relating to filing supplemental authority (ECF No. 49, 50) are **DENIED**.

                                                        s/David M. Lawson
                                                        DAVID M. LAWSON
                                                        United States District Judge

Dated:   December 9, 2020